FILED

2013 Jun-04  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In re Application of IDENIX PHARMACEUTICALS, INC., Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings, Pursuant to the Federal Rules of Civil Procedure, of Respondent JEREMY L. CLARK. ) ) ) ) ) ) ) ) ) | Case No. _____ |

## APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782

Petitioner, Idenix Pharmaceuticals, Inc. ("Idenix"), applies to this Court for

an order pursuant to 28 U.S.C. § 1782 ("Section 1782") authorizing its attorneys to

issue and serve document and deposition subpoenas upon Respondent, Jeremy L.

Clark, to obtain discovery now for use in a Canadian patent dispute, and for

authorization to serve additional subpoena(s) for testimony for use in other foreign

jurisdictions in the future.  Mr. Clark, who resides in this district, is the only named

inventor on multiple patents and patent applications (both U.S. and foreign),

including the Canadian patent that gives rise to the specific discovery requests in

this 1782 application.  These patents and patent applications are now allegedly

owned by Gilead Pharmasset LLC, a subsidiary of Gilead Sciences, Inc.

("Gilead").  Mr. Clark worked for the predecessor of Gilead Pharmasset LLC when

he allegedly invented the inventions claimed and described in these patents and patent applications.

Idenix and Gilead are competitors in the pharmaceuticals market and, in particular, in the market for treatments of the hepatitis C virus. Currently, the parties are engaged in a number of patent disputes involving Mr. Clark's foreign patents that are pending before foreign tribunals in Canada, Norway, and Australia (collectively, "the Foreign Proceedings"). In the Foreign Proceeding pending in Canadian Federal Court (Court File No. T-1156-12 ("the Canadian Suit")), Idenix is challenging the inventorship, ownership, and validity of Mr. Clark's Canadian Patent No. 2,527,657 ("the Canadian '657 Clark patent").

As the sole named inventor on the challenged patents and patent applications at issue in Canada and in the other Foreign Proceedings, Mr. Clark is likely to be in possession of documents and information relevant to Idenix's claims. Absent this Court's assistance, however, Idenix will be unable to obtain critical discovery from Mr. Clark for use in the Canadian Suit or other Foreign Proceedings because the foreign tribunals in which Idenix is pursuing its claims do not have the power to compel discovery from Mr. Clark. Accordingly, Idenix has presented a "textbook predicate for a successful Section 1782 petition." *Heraeus Kulzer GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (Posner, J.).

A proposed document subpoena seeking the production of documents from Mr. Clark is attached as Exhibit 1.  A second proposed subpoena seeking testimony from Mr. Clark is attached as Exhibit 2.

## I.   FACTUAL BACKGROUND ON THE PARTIES, MR. CLARK'S ALLEGED INVENTIONS, AND THE CANADIAN SUIT

### A.   Idenix, HCV, And The Idenix Inventions To Treat HCV

1.     Idenix is a pharmaceutical company with its headquarters located at 320 Bent Street, Cambridge, Massachusetts 02141-2025.  The company's primary focus is on the discovery and development of drugs to treat human viral and infectious diseases, particularly the hepatitis C virus ("HCV").  Chronic HCV is a life-threatening disease affecting the liver.   While those infected are often symptom-free and unaware they have contracted the virus, chronic infections can result in liver damage, liver failure, liver cancer, or even death.  HCV is the leading cause of cirrhosis and liver cancer and the most common reason for liver transplants in the United States.

2.     It is estimated that more than 170 million people worldwide are chronically infected with HCV.  Approximately 350,000 people die each year from HCV-related causes.  There is currently no vaccine against HCV.

3.     In developing potential treatments for HCV, researchers have focused on the way that HCV replicates in the body in order to try to find a way to stop the replication process.  The present patent dispute involves the use of compounds—

known as 2'-methyl, 2'-fluoro substituted nucleosides—that are designed to hinder replication of the virus in the body.

4.      In response to the significant global need for an effective way to treat HCV, a team of researchers led by Jean-Pierre Sommadossi began working with 2'-methyl substituted nucleosides to try to find a treatment that would be effective in treating HCV.

5.      In the late 1990's, Dr. Sommadossi co-founded a company with Dr. Raymond F. Schinazi that later became Idenix to exploit this research into potential HCV treatments including di-substituted 2'-methyl nucleosides, including 2'-fluoro, 2'-methyl substituted nucleosides.

6.      The Idenix scientists made significant advances in this area in the early 2000s, and Idenix filed several provisional patent applications in the United States Patent and Trademark Office ("USPTO") describing their inventions:  Serial No. 60/392,350 (filed June 28, 2002); Serial No. 60/392,351 (filed June 28, 2002); Serial No. 60/466,194 (filed April 28, 2003); and Serial No. 60/470,949 (filed May 14, 2003) (collectively, "the Idenix Priority Applications").

7.      Idenix   subsequently   filed   numerous   non-provisional   patent applications in the United States and in various foreign countries claiming priority to one or more of the Idenix Priority Applications.   Idenix's Canadian patent

claims priority to the Idenix Priority Applications and was the impetus for Gilead's initiating the Canadian Suit that ultimately led to this 1782 application.

**B.    Jeremy Clark, His Work For Pharmasset, And His Patent That Gives Rise To This 1782 Application**

8.    Mr. Clark resides in this district and was a research scientist.  In June, 2001, Mr. Clark was recruited to work for a pharmaceutical company known at that time as Pharmasset, Inc.[1] ("Pharmasset").  Pharmasset was founded by Dr. Schinazi (who also co-founded Idenix's predecessor company with Dr. Sommadossi), Dr. Sommadossi, and Dr. Dennis Liotta.  Drs. Schinazi and Liotta were both researchers and faculty at Emory University.  Pharmasset was allegedly formed to develop antiviral drugs, conduct clinical trials, and commercialize approved drugs resulting from the research and development work that Drs. Schinazi and Liotta conducted at Emory University and from the efforts of Pharmasset's own employees, like Mr. Clark.

9.    When Mr. Clark was hired by Dr. Schinazi to work for Pharmasset, Dr. Schinazi held positions with multiple entities, including Pharmasset, Emory University, the Veterans Administration, and Idenix.  In his position as consultant to Idenix, Dr. Schinazi received confidential information from Dr. Sommadossi.

---

[1] Pharmasset was founded in 1998.  From 1998 to 2004, Pharmasset's corporate identity changed several times until it was finally incorporated in Delaware in 2004.  The details of these technical changes are not material to the request for discovery assistance raised by this application.

10.     During Mr. Clark's employment at Pharmasset, he conducted research into various treatments for HCV infections.  He was involved in the identification and testing of a molecular compound, now known as PSI-6130, that Mr. Clark and others at Pharmasset believed could be effective in treating HCV infections.  PSI-6130 is a 2'-fluoro, 2'-methyl substituted nucleoside.

11.     On May 30, 2003, several weeks after Idenix filed the latest of the Idenix Priority Applications, Pharmasset filed a provisional patent application with the USPTO naming Mr. Clark and Lieven Stuyver as co-inventors.   That provisional application was directed to PSI-6130 and was assigned USPTO Serial No. 60/474,368 ("the '368 provisional application").

12.     In addition to pursuing United States patents based on the '368 provisional application, Pharmasset sought foreign patent coverage for the alleged inventions in the '368 provisional application.  Pharmasset filed a PCT application on April 21, 2004 directed to PSI-6130.  The PCT application named Mr. Clark as the sole inventor and claimed priority to the '368 provisional application.[2]

13.     Pursuant to the terms of his employment agreement, Mr. Clark executed several assignments purportedly assigning his rights in PSI-6130 to an affiliate of Pharmasset, Pharmasset Ltd. (Barbados).

---

[2] Mr. Stuyver was removed as co-inventor without explanation with the filing of the PCT application, leaving Mr. Clark the sole named inventor.

14.     In February 2005, Mr. Clark left Pharmasset and took a position at Southern Research Institute in Alabama.

15.     On November 29, 2005, Pharmasset requested national stage entry for its PCT application at the Canadian Patent Office.   That Canadian application eventually issued as the Canadian '657 Clark patent on June 14, 2011.   The Canadian '657 Clark patent is directed to PSI-6130 and claims priority to the '368 provisional application.

16.     Pharmasset has filed four other Canadian patent applications directed to PSI-6130, each of which is a divisional application of the application leading to the Canadian '657 Clark patent.  Each divisional application names Mr. Clark as the sole inventor and claims priority to the '368 provisional application.  To date, none of the four divisional applications has issued as a Canadian patent.

**C.     Gilead's Acquisition Of Pharmasset And Mr. Clark's Alleged Inventions**

17.     In 2007, Pharmasset began to trade its stock publicly, with a listing on NASDAQ under the ticker VRUS.  Pharmasset's public offering raised money for the company and its shareholders, including Dr. Schinazi.[3]

---

[3] At about this time, Mr. Clark learned of the public offering.  He became upset because he believed that the company and Dr. Schinazi had profited from the inventions claimed in the Clark Patents, but Mr. Clark had not received any compensation based upon the success of his alleged inventions.  Mr. Clark filed three lawsuits in this Court alleging that he had been defrauded into signing away his rights to the inventions and the associated profits.  *See Clark v. Schinazi and Pharmasset*, No. 5:08-cv-00204-CLS (N.D. Ala. filed Feb. 5, 2008); *Clark v. Schinazi*, No. 5:09-cv-1789-SLB (N.D. Ala. filed Sept. 4, 2009), and *Clark v. Schinazi, Emory*

18.   Later, on November 21, 2011, Gilead announced its intention to purchase Pharmasset, which became a wholly owned subsidiary of Gilead, known as Gilead Pharmasset LLC.

19.   Through this acquisition, Gilead now alleges that it owns the rights to a compound known as GS-7977, or sofosbuvir, which is based on PSI-6130 and the inventions claimed in Mr. Clark's patents and patent applications, including the Canadian '657 Clark patent.

20.   Gilead has filed for approval to market GS-7977 in the United States to treat HCV with a 2'-fluoro, 2'-methyl substituted nucleoside compound, but has not, as yet, obtained final approval from the FDA.  It has filed similar requests for regulatory approval in Europe and in Canada.

**D.    Mr. Clark Possesses Discoverable Information That Is Critical To Idenix's Claims In The Canadian Suit**

21.   In early 2012, Gilead began a global campaign to invalidate Idenix's patent rights in 2'-fluoro, 2'-methyl substituted nucleosides because those patent rights would prevent Gilead from freely marketing GS-7977.  To that end, Gilead launched attacks in strategic forums to challenge Idenix's patent rights.

---

(continued...)

*University and Atlanta VA Medical Center*, No. 5:10-cv-01487-AKK (N.D. Ala. June 14, 2010). The earliest case remains pending and is in arbitration; the latter two cases have been dismissed.

22.     One such forum was Canada.   On June 15, 2012, Gilead, and its wholly owned subsidiary Gilead Sciences Canada, Inc. ("Gilead Canada"), filed the Canadian Suit in the Canadian Federal Court.  On August 9, 2012, Gilead and Gilead Canada filed an amended statement of claim.   *See* Declaration of Viktor Haramina ("Haramina Decl."), at ¶ 5, attached hereto as Exhibit 3.

23.     In the Canadian Suit, Gilead and Gilead Canada are alleging invalidity of  Idenix's Canadian Patent No. 2,490,191 ("the '191 Patent"), which claims priority to the Idenix Priority Applications and covers compounds from the group of 2'-fluoro, 2'-methyl substituted nucleosides that are effective in treating, *inter alia*, HCV.

24.     In response to these claims, Idenix asserts several defenses and counterclaims, including a challenge to the validity of Gilead's Canadian '657 Clark Patent. *Id.*, ¶ 13.

25.     In addition, Idenix supplemented its pleadings to add another counterclaim alleging that the Canadian '657 Clark Patent is invalid, void, and unenforceable for failing to name Dr. Raymond F. Schinazi as the inventor or a co-inventor. *Id.*, ¶ 15. In its supplemental pleading, Idenix alleges that Pharmasset's naming of Mr. Clark as the sole inventor along with the omission of naming Dr. Schinazi as the inventor or co-inventor were not made in good faith because, *inter alia*, Dr. Schinazi had entered into agreements with several entities relating to his

work on the subject-matter of the Canadian '657 Clark Patent. *Id.* Dr. Schinazi's stated conception of the invention of the '657 Patent occurred as a result of his involvement in these agreements. *Id.* Dr. Schinazi's agreements, with at least Idenix, Emory University, and the United States Government, required Dr. Schinazi to assign or share patent rights, including rights to the Canadian '657 Clark patent, with the other parties to the agreements. *Id.* Idenix's counterclaim asserts that omitting Dr. Schinazi as a named inventor was intended to avoid the ownership claims of others to the Canadian '657 Clark Patent. *Id.*

26.    As the sole named inventor on the Canadian Clark '657 patent, Mr. Clark very likely has knowledge and information relevant to Idenix's defenses and counterclaims in the Canadian Suit. *Id.*, ¶ 16.

**E.    Without This Court's Discovery Assistance, Idenix Has No Means To Compel Documents And Testimony From Mr. Clark For Use In The Canadian Suit**

27.    The procedural rules in the Canadian Federal Court specifically contemplate that parties will take the deposition of the inventor(s) in a patent suit.[4] Such examinations for discovery are governed by the Canadian *Federal Courts Rules*. *Id.*, ¶ 17.

28.    According to Rule 237(4) of the Canadian *Federal Courts Rules*, an inventor of a patent who assigns his/her rights to an assignee may be examined for

---

[4] The Canadian rules permit inventor(s) to be "examine[d] for discovery," which is the equivalent of an American deposition. Haramina Decl., ¶ 17.

discovery in a Federal Court action to which the assignee is a party. *Id.* Further, the Canadian *Federal Courts Rules*, SOR/98-106, grants each party a right to ask questions, under oath, about matters relevant to the issues plead, of the other party's representative, and any assignor of rights to that party. *Id.*

29.     Thus, in the Canadian Suit, because each party owns a patent-at-issue in the dispute, both Gilead and Idenix have the right to examine the inventors named on the opposing party's patent.

30.     Pursuant to these rules, on February 27, 2013, the Federal Court of Canada issued a Direction in the Canadian Litigation requiring the parties "to report to each other and to the Court as to the location of the inventors of their respective patents, their availability for discovery and whether they will be submitting to discovery voluntarily, by March 28, 2013." *Id.*, ¶ 19. The Court also scheduled a case management teleconference on April 3, 2013, to discuss a schedule for the steps in the Canadian Litigation, "bearing in mind that discoveries are expected to be completed by the end of August or, at worst, the end of September 2013." *Id.*

31.     Even though Idenix does not currently employ any of the four inventors of its '191 Patent, Idenix contacted each of the inventors, as directed by the Canadian Federal Court. *Id.*, ¶ 20. On March 27, 2013, Idenix advised the Court and Gilead of the location, availability, and voluntary attendance for

discovery for each inventor of the '191 Patent. *Id.* Examination for discovery of the inventors of the Idenix patent are currently being scheduled to take place in the United States, France, and Italy. *Id.*

32.    In contrast to Idenix's efforts to assist in the scheduling of discovery of its inventors, counsel for Gilead advised the Canadian Court and Idenix on March 27, 2013 that it "no longer has a relationship with Mr. Jeremy Clark, the named inventor of Canadian Patent No. 2,527,657. Consequently, Gilead cannot make Mr. Clark available for examination for discovery." *Id.*, ¶ 21. Gilead did not indicate at that time whether it made any effort to contact Mr. Clark. *Id.*

33.    On April 3, 2013, during the case management conference with the Canadian Court, Gilead's counsel advised the Court that "Gilead is unable to contact [Mr. Clark] due to an arbitration; however they have no objection to Idenix contacting him." *Id.*, ¶ 22.

34.    Following the case management conference, on April 3, 2013, the Federal Court issued an Order requiring that "[t]he first round of examinations on discovery of the inventors will be completed by September 30, 2013." *Id.*, ¶ 23.

**F.    Idenix Seeks This Court's Discovery Assistance For The Foreign Proceedings**

35.    Idenix seeks this Court's assistance to obtain documents and deposition testimony from Mr. Clark for use in the Canadian Suit and the Foreign Proceedings.

36.     On May 21, 2013, Canadian counsel for Idenix contacted Mr. Clark to discuss his willingness to cooperate in discovery. *Id.*, ¶ 24. Mr. Clark advised that he will not volunteer to be deposed. *Id.* Without this Court's assistance, Idenix cannot obtain the necessary deposition documents and testimony. *Id.*

37.     Accordingly, Idenix seeks this Court's authorization to serve the attached subpoenas in order to formalize the process of obtaining documents and taking a deposition, to give notice to the opposing Gilead parties in the Canadian Suit, and to provide a vehicle for resolution of any objections Mr. Clark might raise in the future.

38.     In addition, Idenix has commenced this action because it anticipates it may need discovery from Mr. Clark in connection with the other Foreign Proceedings in the future. Currently, Idenix and Gilead are involved in patent disputes involving the same or similar inventions in Norway and Australia. Those proceedings have not yet progressed to the point where Idenix's specific discovery needs are fully developed, but it is very likely that Mr. Clark has information and knowledge relevant to those proceedings as well. Thus, Idenix seeks authorization from this Court to serve additional deposition subpoena(s) as the other Foreign Proceedings progress.

## II.   IDENIX'S APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

Section 1782 authorizes this Court to order any person in this judicial district to give testimony or produce documents for use in a foreign proceeding upon the application of any person with an interest in that proceeding.  Specifically, Section 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to … the application of any interested person and … [t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

Thus, to obtain discovery in aid of a foreign litigation, a petitioner must show:  (a) that the person to provide discovery resides or is found in the district where the application is made; (b) that the information sought is "for use in a proceeding in a foreign or international tribunal"; and (c) that the petitioner is an "interested person" in the foreign proceeding.  *Id.*; *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004).  Idenix's application satisfies all three requirements.

*First*, Mr. Clark resides or can be found in this district. He maintains a residence at 349 S. Burbank Drive, Birmingham, Alabama 35226. Declaration of Susan Gerber ("Gerber Decl.") at ¶ 3, attached hereto as Exhibit 4. On information and belief, the documents that Idenix seeks are located in this district, or are within Mr. Clark's possession, custody, or control, as those terms are defined in Federal Rule of Civil Procedure 34. Idenix's application meets Section 1782's first requirement.

*Second*, the information sought in this application is relevant to and is being sought for Idenix's use in the Canadian Suit and potentially other Foreign Proceedings. The Canadian Federal Court is a trial court and qualifies as a foreign tribunal within the meaning of Section 1782. *See, e.g.*, *Intel*, 542 U.S. at 258. Likewise, the other Foreign Proceedings are taking place before national patent tribunals in Australia and Norway. Thus, Idenix's application also meets Section 1782's second requirement.

*Third*, Idenix is a party to the Canadian Suit and the other Foreign Proceedings. Because parties to foreign litigation are "interested persons" under Section 1782, Idenix is an "interested person" for purposes of this application. *Intel*, 542 U.S. at 256 ("[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"). Accordingly, Idenix's application satisfies Section 1782's third requirement, too.

III.   **THE COURT SHOULD EXERCISE ITS DISCRETION AND PERMIT IDENIX TO OBTAIN THE REQUESTED DISCOVERY FROM MR. CLARK**

Once the three statutory requirements are satisfied, this Court must determine, in its discretion, whether to order the requested discovery assistance. *Intel*, 542 U.S. at 264.  In *Intel*, the Supreme Court refused to adopt inflexible rules for determining when or to what extent Section 1782 permits discovery.  Instead, the Court offered factors for the district court to consider in making that determination.  *Intel*, 542 U.S. at 247 ("Whether such assistance is appropriate in this case is a question yet unresolved.  To guide the District Court on remand, we suggest considerations relevant to the disposition of that question.").

The four factors suggested by the Supreme Court for consideration are:  (a) "when the person from whom discovery is sought is a participant in the foreign proceeding . . ., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (b) "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (c) "a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (d)

- 16 -

"unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 264-65.

In addition to these factors, the Court also should consider the overarching principles of Section 1782. "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. While this legislation has undergone many amendments, these amendments have steadily and consistently moved the legislation in the singular direction of providing more, not less, discovery for use in more, not fewer, judicial and quasi-judicial forums in connection with more, not fewer, types of proceedings. *See id.* at 248-49. Indeed, Section 1782 has two aims: to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts. *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992); *Marubeni America Corp. v. LBA Y.K.*, No. 08-3282-cv, 2009 WL 1738509, at *1 (2d Cir. June 17, 2009) (noting that the district court's discretion should be guided by the twin aims of the statute). To that end, Section 1782 has been described as a "one-way street" that grants wide assistance, but demands nothing in return. *Malev*, 964 F.2d at 101. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of

discovery assistance." *In re Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). If a court fails to consider this backdrop in analyzing the discretionary *Intel* factors, it risks abusing its discretion. *Malev*, 964 F.2d at 101-02.

Moreover, the reach of Section 1782's discovery assistance is broad: "[A] party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, . . . and, in the discretion of that court, can obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad." *Heraeus*, 633 F.3d at 594. As the Eleventh Circuit recently explained:

> Section 1782 does not require that every document discovered be actually used in the foreign proceeding. Quite the opposite. Section 1782 expressly provides that the district court should grant discovery under the Federal Rules of Civil Procedure. Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .'.

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA)*, Inc., 685 F.3d 987, 999 (11th Cir. 2012).

As discussed below, granting discovery in the present situation fits squarely with the *Intel* factors while achieving the dual aims of Section 1782. *First*, granting the application permits Idenix to obtain discovery from Mr. Clark for use in the Canadian Suit in the most efficient manner possible. *Second*, granting the

application serves to encourage similarly situated foreign tribunals to adopt like-minded measures in the future—consistent with Congress's intent in passing Section 1782. Applying the *Intel* factors and considering the overarching principles behind the statute, the Court should exercise its discretion and permit Idenix to obtain the discovery it seeks from Mr. Clark.

### A.    Mr. Clark Is A Nonparticipant In The Canadian Suit

The first *Intel* factor considers whether Mr. Clark is a party to the foreign proceedings because when a respondent is a party, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Mr. Clark is not a party to the Canadian Suit (or any of the Foreign Proceedings). Moreover, Gilead represented to the Canadian Federal Court that it does not control Mr. Clark and cannot compel him to provide discovery in the Canadian Suit. Haramina Decl., ¶ 21. Thus, Mr. Clark is a nonparticipant in the Canadian Suit.

Granting discovery under Section 1782 is favored where—as in this case—the foreign tribunal cannot compel the discovery the petitioner seeks. Indeed, while the Supreme Court framed this *Intel* factor in terms of the respondent's status as a party (or non-party), the proper inquiry examines "the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782

application." *In re OOO Promnefstroy*, Misc. No. M 19-99(RJS), 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009).

Because Mr. Clark is neither a party to the Canadian Suit nor under Gilead's control, the Canadian Federal Court has no ability to order Mr. Clark to produce documents or sit for a deposition. Thus, without this Court's assistance, Idenix may be unable to obtain Mr. Clark's documents and testimony concerning the Canadian '657 Clark patent for use in the Canadian Suit. Haramina Decl., ¶¶ 21-22.

Furthermore, even if the Canadian court had the ability to order production of the requested materials (which it does not), Section 1782 does not require that Idenix invoke that mechanism or exhaust all possible alternatives before making a Section 1782 application to this Court. *Intel*, 542 U.S. at 261-62; *see also In re The Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1115 (E.D. Wis. 2004).

Accordingly, this factor weighs in favor of granting Idenix's application.

## B.   The Canadian Federal Court Explicitly Contemplates Idenix's Obtaining The Discovery Sought In This Application

The second *Intel* factor considers the nature of the foreign tribunal and its receptiveness to the discovery being sought. In this case, the procedural rules of the Canadian Federal Court explicitly allow Idenix to obtain the discovery sought in this application from Mr. Clark. Haramina Decl., ¶¶ 17-18. The Canadian Federal Court expects that each party will take discovery of the other party's

inventors and has set a deadline of September 30, 2013, for completion of "[t]he first round of examinations on discovery of the inventors." *Id.*, ¶ 23.

In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, this factor weighs in favor of granting a Section 1782 application. *In re Minatec Fin. S.A.R.L. v. SI Group Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *6-7 (N.D.N.Y. Aug. 18, 2008) (upon finding the absence of authoritative declarations from the forum country's judiciary, executive branch, or legislature addressing the use of evidence obtained by Section 1782, petitioner's request for discovery was granted).

In fact, the absence of such authoritative proof should end the inquiry. *Minatec*, 2008 WL 3884374, at *6 ("Although the effort to provide this Court with th[ese] various perspectives interpreting German law is laudatory, both parties should have known that both the Supreme Court and the Second Circuit have repeatedly denounced such a practice and that such endeavor may be meaningless."). Indeed, a court should turn to "the statute's 'overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in the litigation'" in deciding whether to allow the discovery. *Id.* at *7. Here, rather than evidencing an intent to reject the fruits of Idenix's Section 1782 application, the Canadian Federal Court expressly stated it expects Idenix to obtain Mr. Clark's testimony.

This factor also weighs in favor of granting Idenix's application.

### C.    Idenix's Section 1782 Application Is Consistent With The Proof Gathering Practices Of The Canadian Federal Court

Similarly, the third *Intel* factor considers whether the foreign jurisdiction has proof-gathering restrictions that might be improperly circumvented if the discovery request is granted.  While the Canadian Federal Court has no authority to order Mr. Clark to produce documents or sit for a deposition in the Canadian Suit, Canadian law does not prohibit Idenix from obtaining—or using—the discovery it seeks from Mr. Clark.  Haramina Decl., ¶¶ 17-18.  To the contrary, Canadian law expressly provides for this discovery.  *Id.*, ¶ 19.  Because the Canadian Federal Court does not impose any restrictions upon the gathering of evidence that are inconsistent with a Section 1782 application, this factor weighs in favor of granting Idenix's application.

### D.    The Discovery Idenix Seeks From Mr. Clark Is Narrowly Tailored To Issues Disputed In The Canadian Suit

Idenix has narrowly tailored the discovery requested in this application to issues relevant in the Canadian Suit.  Idenix seeks documents and testimony from Mr. Clark concerning his employment at Pharmasset; the inventorship, ownership, and development of the alleged inventions claimed in the Canadian '657 Clark Patent; the events surrounding the conception of the alleged inventions; and the

validity of the Canadian '657 Clark Patent, all of which are disputed in the Canadian Suit.

Moreover, production of the discovery sought by Idenix will not be unduly burdensome for Mr. Clark. *First*, Mr. Clark has been actively involved in litigation before this Court for years.   Based on his filings, he has extensive files documenting the work he performed at Pharmasset.  Providing those files to Idenix would impose no excessive burden on Mr. Clark. *Second*, Mr. Clark is currently participating in an arbitration against Pharmasset involving issues that overlap those in the Foreign Proceedings.   Given that the arbitration is currently being litigated, Mr. Clark should have easy and immediate access to the vast majority, if not all, of the documents sought by the subpoenas. *Third,* to minimize the burden imposed by a deposition, Idenix's Canadian counsel will take the deposition of Mr. Clark at a time and location convenient to Mr. Clark.  And, Idenix will compensate Mr. Clark for his time to attend the deposition.  To the extent Idenix requires future depositions of Mr. Clark for other Foreign Proceedings, Idenix's counsel likewise will conduct the depositions for use in those proceedings at a time and location convenient to Mr. Clark, and Idenix will compensate Mr. Clark for his time to attend any such depositions. *Fourth*, Idenix has narrowly tailored the document requests in this application.  Thus, the discovery requested relates to a well-defined and limited set of documents and information.

Moreover, while Idenix has made every effort to propound narrowly tailored discovery requests, if the Court deems any of the requests to be overly broad, the proper course of action is to modify the subpoena, rather than to quash it outright:

> [R]ecently, we have made the point that although American-style discovery for one party may skew foreign litigation, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa*, 51 F.3d at 1101. The district court did not follow this guidance.

*In re Application For An Order Permitting Metallgesellschaft AG to Take Discovery v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997); *id.* at 78 ("We agree with MG that the district court abused its discretion in refusing discovery."). *See also Heraeus*, 633 F.3d at 598 ("For all we know, [Heraeus' discovery requests] are too broad. But if so, it doesn't follow that Heraeus is not entitled to *any* discovery. It's not as if its demands were frivolous; it obviously needs a good deal of discovery in order to prepare its case against Biomet. If it's asking for too much, the district court can and should cut down its request, but not to nothing, as it did. That was unreasonable, and therefore reversible.").

This factor, therefore, weighs in favor of granting Idenix's application.

## IV.   IDENIX SEEKS DOCUMENTS FOR THE FOREIGN PROCEEDINGS NOW, A DEPOSITION FOR THE CANADIAN CASE NOW, AND PERMISSION TO SUBPOENA FURTHER DEPOSITION(S) FOR THE FOREIGN PROCEEDINGS IF NEEDED

*First,* Idenix seeks authorization to serve the proposed document subpoena on Mr. Clark, seeking the production of documents from Mr. Clark pursuant to Rules 45 and 34 of the Federal Rules of Civil Procedure for use in any and all of the Foreign Proceedings. *See* Exhibit 1. Idenix proposes this single production of all relevant documents found in Mr. Clark's possession, custody, or control to minimize the burden on Mr. Clark and avoid a piecemeal production of documents.

*Second,* Idenix requests authorization to subpoena Mr. Clark for deposition pursuant to U.S. procedural law, to satisfy the Canadian requirements for discovery of inventors. *See* Exhibit 2. Section 1782 permits a district court to "prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing." 28 U.S.C. § 1782(a). Here, the Canadian *Federal Courts Rules* allow for "examinations for discovery" of inventors, which is the Canadian equivalent of an American deposition. *See* Haramina Decl., ¶ 17. By allowing Canadian counsel to depose Mr. Clark in accordance with U.S. law, the Canadian discovery requirements will be met. *Id.*

*Third,* because each foreign jurisdiction has its own procedures and admissibility requirements, Idenix requests authorization to issue such further

deposition subpoenas in the future as may be necessary to obtain discovery of Mr. Clark for use in the other Foreign Proceedings, particularly for Norway and Australia. As with the proposed subpoena submitted with this petition, any later deposition subpoena will be directed to the specific issues raised in the Foreign Proceeding. Moreover, to minimize the inconvenience to Mr. Clark, Idenix would conduct any further depositions at a time and location convenient to Mr. Clark and will compensate him for his time. In all events, Idenix will make every effort to obtain testimony for the various Foreign Proceedings in a manner that is least burdensome to Mr. Clark.

## V.   IDENIX'S *EX PARTE* APPLICATION SHOULD BE GRANTED EXPEDITIOUSLY

An application under Section 1782 is typically brought *ex parte*. *See, e.g.*, *In re Imanagement Servs. Ltd.*, No. Misc. 05-89(FB), 2005 WL 1959702, at *1 (E.D.N.Y. Aug. 16, 2005); *In re Hill*, No. M19-117(RJH), 2005 WL 1330769, at *1 (S.D.N.Y. June 3, 2005). If the petitioner shows that the three statutory factors are met, the district court will typically authorize service of the subpoena. Then, if the respondent objects to the subpoena, he will bring a motion to quash or motion for a protective order, and the district court can then evaluate the respondent's objections.[5]

---

[5] Idenix has requested this Court authorize it to serve additional deposition subpoenas for testimony to be used in the other Foreign Proceedings as the need for discovery develops. This Court may properly authorize service of such additional subpoenas in advance because Mr. Clark

In this case, time is of the essence. The Canadian Suit is moving rapidly toward determination, and the Canadian Federal Court imposed a deadline of September 30, 2013, for Idenix to obtain discovery from Mr. Clark. Haramina Decl., ¶ 23. Idenix will be severely prejudiced if it is unable to obtain discovery from Mr. Clark before the deadline imposed by the Canadian Federal Court. Thus, Idenix respectfully asks that this Court authorize Idenix to serve the two proposed subpoenas on Mr. Clark as soon as possible. As indicated in the certificate of service, Idenix is providing courtesy copies of this petition contemporaneously to both Mr. Clark and Gilead's Canadian counsel. After the subpoena is served, if there are any objections to the discovery requested, they can be raised in accordance with Federal Rule of Civil Procedure 45. This procedure is designed to ensure that responsive discovery is obtained promptly and, especially for the deposition, in sufficient time to be of use in the Canadian Suit, particularly so that the document production and deposition of Mr. Clark will be completed well before September 30, 2013.

## VI.  CONCLUSION

This Court should exercise its discretion in favor of Idenix to effectuate the twin aims of 28 U.S.C. § 1782: "providing efficient means of assistance to

--------

(continued...)

retains the right to file a motion to quash or for a protective order as to each subpoena Idenix might serve.

participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Malev*, 964 F.2d at 100 ; *see also Intel*, 542 U.S. at 252.

WHEREFORE, Petitioner Idenix prays for entry of an order authorizing its attorneys to take discovery relevant to the issues generally identified in this application, including issuing and serving the subpoenas in the form of Exhibits 1 and 2 attached hereto,[6] compelling Mr. Clark to provide the discovery described therein.

---

[6] When serving the authorized document subpoena on Mr. Clark, Idenix intends to attach a copy of the Canadian '657 patent and the published PCT application, WO 2005/003147. for Mr. Clark's reference.  Because these patents are quite voluminous and have been submitted to the Court with Mr. Haramina's declaration as Exhibits E and G, respectively, Idenix has not included a second copy of the patents with the proposed document subpoena.

Respectfully submitted on this the 4th day of June, 2013.

|  | /s/    *Harlan I. Prater* |
|--|--|
|  | Harlan I. Prater, IV (PRATH7485) |
|  | Audrey E. Brown (BROWA9981) |
|  | LIGHTFOOT, FRANKLIN & WHITE, LLC |
|  | The Clark Building |
|  | 400 20th Street North |
|  | Birmingham, AL  35203 |
|  | Telephone:  205-581-0720 |
|  | Facsimile:  205-380-9120 |
|  | Email: hprater@lightfootlaw.com |
|  |  |
|  | Of Counsel: |
|  | Calvin P. Griffith (*pro hac appln to be filed*) |
|  | Susan M. Gerber (*pro hac appln to be filed*) |
|  | JONES DAY |
|  | North Point |
|  | 901 Lakeside Avenue |
|  | Cleveland, OH  44114 |
|  | Telephone:  216-586-3939 |
|  | Facsimile:  216-579-0212 |
|  | e-mail: cpgriffith@jonesday.com |
|  |         smgerber@jonesday.com |
|  |  |
|  | **Attorneys for Petitioner** |
|  | **Idenix Pharmaceuticals, Inc.** |

## CERTIFICATE OF SERVICE

I do hereby certify that on this the 4th day of June, 2013, I filed the foregoing with the Clerk of the Court, and I provided courtesy copies of the foregoing as follows:

By hand delivery on Respondent, Jeremy Clark, at 349 S. Burbank Drive, Birmingham, AL 35226-1661; and

By e-mail on counsel for Gilead at the following addresses:
jason.markwell@nortonrosefulbright.com;
amy.grenon@nortonrosefulbright.com;
jordana.sanft@nortonrosefulbright.com; and
adam.haller@nortonrosefulbright.com

/s/ *Harlan I. Prater*
Harlan I. Prater, IV
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203
Telephone:  205-581-0720

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

In re Application of IDENIX     )
PHARMACEUTICALS, INC.,     )
Petitioner, for an Order Pursuant to   )
28 U.S.C. § 1782 to Take Discovery   )
for Use in Foreign Proceedings,     )
Pursuant to the Federal Rules of Civil  )     Case No. _____
Procedure, of Respondent JEREMY   )
L. CLARK.                         )
_____ )

## ORDER FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Upon consideration of the Application for Discovery in Aid of Foreign Litigation Pursuant to 28 U.S.C. § 1782, the declarations of Mr. Viktor Haramina and Ms. Susan Gerber in support thereof, and the exhibits attached thereto, and it appearing that the requirements of 28 U.S.C. § 1782 have been satisfied, it is therefore ORDERED that Idenix Pharamceuticals, Inc. ("Idenix") is hereby authorized pursuant to 28 U.S.C. § 1782 to serve upon Respondent, Jeremy Clark, the proposed subpoenas for the production of documents and things and for the taking of deposition testimony from Mr. Clark.

So ordered this ____ day of _____, 2013.


_____
United States District Court Judge